## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MARIA FUENTES,**<br>**460 N Street NW**<br>**Apt. 5**<br>**Washington, DC 20001**<br><br>   **Plaintiff,**<br><br>   **v.**<br><br>**VADOR VENTURES INC., d/b/a**<br>**TOTAL QUALITY BUILDING SERVICES,**<br>**5334 Wisconsin Ave, NW**<br>**Suite 900**<br>**Washington, DC 20015**<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.** _____ |

## COMPLAINT FOR DECLARATORY
## AND MONETARY RELIEF AND JURY DEMAND

Plaintiff, Maria Fuentes, by and through her undersigned attorneys, files this Complaint

for declaratory and monetary relief against her employer, Vador Ventures Inc., d/b/a/ Total

Quality Building Services ("Total Quality" or "Defendant"), to seek redress for Defendant's

violations of the Pregnancy Discrimination Act ("PDA") of Title VII of the Civil Rights Act, 42

U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended by the

ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"), the District of Columbia

Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01, *et seq.* ("PPWFA"),

and the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.* ("DCHRA").

Defendant discriminated against Plaintiff based on her disability and sex, as a pregnant female

with severe back pain, when it failed to provide her with a reasonable accommodation or engage

in the interactive process to determine an appropriate and effective reasonable accommodation, and further discriminated and retaliated against her, when it terminated her employment in violation of the PDA, ADA, PPWFA, and DCHRA. Plaintiff seeks to recover all wages, employment benefits, or other compensation lost or denied due to Defendant's violations, as well as compensatory damages, punitive damages, attorneys' fees, pre-and post-judgment interest, and any other legal or equitable relief this Court deems just and proper to redress Defendant's unlawful actions.

## JURISDICTION AND VENUE

1.      The Court maintains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the laws of the United States, Title VII and the ADA.

2.      The Court maintains supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claims arising under the laws of the District of Columbia, the PPWFA and the DCHRA, because the claims are part of the same case or controversy as those arising under Title VII and the ADA.

3.      This Court maintains personal jurisdiction over the Defendant because Defendant resides and maintains offices at 5335 Wisconsin Avenue, NW, Washington, District of Columbia, 20015, and purposely avails itself of the privilege of conducting employment activities within the District of Columbia and Defendant's acts and omissions alleged herein occurred in the District of Columbia.

4.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains residency in the District of Columbia and is subject to this Court's personal jurisdiction.

2

5.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

## PARTIES

6.     Plaintiff, Maria Fuentes, worked for Defendant from February 2017 through March 27, 2017 as a Day Cleaner at Defendant's 1025 F Street, NW, District of Columbia, 20004 location ("1025 F Street, NW").

7.     At all times relevant to this Complaint, Plaintiff was an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f), the ADA, 42 U.S.C. § 12111(4), the PPFWA, D.C. Code § 32-1231.01, and the DCHRA, D.C. Code § 2-1402.01

8.     Plaintiff is a female adult resident of the District of Columbia, who was pregnant and suffered from severe back pain related to her pregnancy.

9.     Defendant, Total Quality, is a corporation that does business in the District of Columbia in the form of janitorial/custodial and housekeeping services, building maintenance, trash removal, and snow removal services.

10.     At all times relevant to this Complaint, Total Quality provided services at multiple worksites located in the District of Columbia.

11.     Defendant is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), the ADA, 42 U.S.C. § 12111(5)(A), the PPFWA, D.C. Code § 32-1231.01, and the DCHRA, D.C. Code § 2-1402.01.

12.     At all times relevant to this Complaint, Total Quality employed over 500 employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff properly exhausted administrative remedies as required.

14.     On or about March 28, 2017, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her sex, a pregnant female, in violation of Title VII, as amended, and the DCHRA.

15.     On or about June 7, 2017, Plaintiff timely amended her charge to include a claim of discrimination on the basis of a disability, severe back pain related to her pregnancy, in violation of the ADA, EEOC Charge No. 570-2017-01121.

16.     At the request of Plaintiff, the EEOC issued a notice of right to sue without issuing a finding. More than 180 days had passed since the filing of the charge.

17.     Plaintiff received the notice of right to sue on October 5, 2017.

18.     All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by Title VII, 42 U.S.C. § 2000e(b) and the ADA, 42 U.S.C. § 12111(5)(A), the PPFWA, D.C. Code § 32-1231.01, and the DCHRA, D.C. Code § 2-1402.01.

## FACTS

19.     In or around April 2015, P&R Enterprises ("P&R") hired Plaintiff as a Day Cleaner.[1]

20.     P&R Enterprises assigned Plaintiff to clean the building located at 1025 F Street, NW where the Federal Bureau of Investigations ("FBI") is a tenant. It assigned Plaintiff to clean floors occupied by the FBI.

21.     During her employment with P&R, Plaintiff's supervisor was Eugene Riviera.

---

[1] As discussed below, P&R Enterprises was the predecessor to the contract taken over by Defendant on which Plaintiff worked. P&R is not a party to the instant action.

22.     At all times relevant, Plaintiff's performance was excellent.

23.     At all times relevant, Plaintiff maintained a good working relationship with her colleagues and the tenants of the building.

24.     On or around February 1, 2017, Defendant took over the cleaning contract from P&R Enterprises for the building located at 1025 F Street, NW.

25.     At the time that Defendant took over the cleaning contract, Defendant became Plaintiff's employer. Plaintiff completed an application for employment with Defendant and Total Quality hired Plaintiff to continue working as a Day Cleaner at 1025 F Street, NW.

26.     Shortly after Defendant took over the cleaning contract, Heidi Cruz became the Day Supervisor at 1025 F Street, NW and Plaintiff's supervisor.

27.     After Defendant became Plaintiff's employer, Plaintiff's performance continued to be excellent.

28.     After Defendant became Plaintiff's employer, Plaintiff maintained her good relationships with tenants of the building and her co-workers.

29.     At all times relevant to the instant Complaint, Plaintiff worked approximately 40 hours per week and earned $14.30 per hour.

30.     When Defendant took over the cleaning contract at 1025 F Street, NW and became Plaintiff's employer, Plaintiff's duties remained mostly unchanged.

31.     As a Day Cleaner for Defendant, and at all times relevant to the instant Complaint, Plaintiff's duties included cleaning the entire fifth floor, including four bathrooms, hallways, office space, and two kitchens, and the entire seventh floor, excluding the bathrooms but including hallways, office space, and one kitchen.

32.     At all times relevant to the instant Complaint, Plaintiff's duties while employed by Defendant related to cleaning the hallways, office space, and kitchens comprised the majority of her day. To clean these areas, Plaintiff's tasks included mopping the floors, sweeping the floors, vacuuming carpeted areas, dusting, taking out the trash, and wiping down kitchen counters and the kitchen sink.

33.     Plaintiff was not required to use harsh chemicals during the performance of her duties cleaning the hallways, office spaces, or kitchens.

34.     The majority of Plaintiff's duties did not require her to use any toxic chemicals.

35.     At all times relevant to the instant Complaint, Plaintiff's duties included cleaning the fifth floor bathrooms twice a day.

36.     To clean the bathrooms, which were not well-ventilated, Plaintiff squatted in a small bathroom stall to clean the outside, the underside, and the back of the toilet bowls.

37.     Cleaning the toilets also required the use of a specific chemical limited to use in the bathroom.

38.     While employed with P&R, prior to Defendant taking over the contract at 1025 F Street, NW, Plaintiff became pregnant with her second child. When she notified Mr. Riviera, her then-supervisor, of her pregnancy, Mr. Riviera informed Plaintiff that he would provide Plaintiff with accommodations as needed.

39.     Upon information and belief, Mr. Riviera had previously provided accommodations to employees with disabilities who were in the same, or similar, positions to Plaintiff.

40.     Upon information and belief, when Mr. Riviera provided accommodations to employees, P&R did not incur any significant expense or interruption to business operations.

6

41.     On or around the time Defendant hired Plaintiff, in February 2017, Plaintiff informed Defendant of her pregnancy.

42.     As Plaintiff's pregnancy progressed, she began to suffer from significant back pain, exacerbated by bending and squatting, and the repetitive movements required to clean the toilets in the small bathroom stalls.

43.     Plaintiff's severe back pain limited her ability to bend and squat.

44.     On March 22, 2017, Plaintiff consulted with her treating medical provider, Dr. Brandi Jones, regarding her pregnancy-related symptoms, including the severe back pain she experienced.

45.     On March 22, 2017, after examining Plaintiff, Dr. Jones determined that Plaintiff had symptoms consistent with pregnancy-related back pain and that the condition was exacerbated by bending and squatting. Dr. Jones recommended to Plaintiff that she limit heavy lifting, avoid bending and squatting, and also suggested she avoid harsh or toxic chemicals.

46.     Dr. Jones was primarily concerned with Plaintiff's continued ability to clean toilets which required her to bend and squat and where she was exposed to harsh chemicals in a poorly ventilated area.

47.     In Dr. Jones' opinion, Plaintiff could continue performing the majority of her duties, including but not limited to mopping, dusting, sweeping and vacuuming.

48.     Dr. Jones provided Plaintiff with a medical note requesting that Plaintiff be placed on light duty, refrain from lifting over 25 pounds, and requesting "frequent breaks, decrease[d] activity requiring bending/squatting, [and] avoidance of harsh/toxic chemicals."

49.     When Plaintiff returned to work on March 23, 2017, she discussed Dr. Jones' recommendations with her colleague Nelly Gutierrez, who was assigned to clean suites at the

same building as Plaintiff but was assigned to clean the fourth floor and different suites on the seventh floor.

50.     At that time, Ms. Gutierrez offered to switch duties with Plaintiff so that Ms. Gutierrez would clean the fifth floor bathrooms while Plaintiff cleaned an area or suite assigned to Ms. Gutierrez.

51.     Ms. Gutierrez worked the same hours as Plaintiff and switching duties would not have affected business operations or posed any expense on Defendant.

52.     The morning of March 27, 2017, Plaintiff requested a reasonable accommodation from Defendant and provided Dr. Jones' March 22, 2017 medical note to her supervisor, Heidi Cruz.

53.     Nothing in her doctor's note indicated that Plaintiff could not continue performing the majority of her duties, including but not limited to vacuuming, sweeping, dusting, mopping, and taking out the trash, which consisted of mostly light paper products and which Plaintiff collected in a push cart.

54.     At the time Plaintiff gave Ms. Cruz the doctor's note and requested a reasonable accommodation, Ms. Cruz did not make a determination about whether to grant or deny her an accommodation.

55.     Rather, Ms. Cruz consulted with her supervisor Jaime Gomez, Area Manager, regarding the request and recommended that Plaintiff not be permitted continue to work unless she could perform **all** of her duties.

56.     Mr. Gomez concurred and agreed with Ms. Cruz that there were no light duty positions available and that Plaintiff could not continue to work for Defendant if she could not perform all her duties.

57.     Later that day, Ms. Cruz met with Plaintiff. Ms. Cruz asked Maria Acevedo, Day Porter, to be present at this meeting as a witness so Ms. Acevedo also attended the meeting.

58.     During the March 27, 2017 meeting, Ms. Cruz told Plaintiff that if she could not perform one hundred percent of all of her work duties, she could not work for Defendant.

59.     Plaintiff told Ms. Cruz that she could still work if accommodated.

60.     During the March 27, 2017 meeting, Plaintiff specifically requested from Ms. Cruz, as an accommodation, that she be reassigned from cleaning the fifth floor bathrooms and that she be assigned other duties in lieu of cleaning the fifth floor bathrooms.

61.     During the March 27, 2017 meeting, Plaintiff also clarified with Ms. Cruz that she could continue to perform the remainder of her duties.

62.     Ms. Cruz  remained adamant that the Company did not have light duty positions, stating that Plaintiff could only continue working for Defendant if she provided a new doctor's note stating that Plaintiff could perform one hundred percent of her work duties.

63.     At the meeting on March 27, 2017, Defendant terminated Plaintiff's employment.

64.     On March 28, 2017, Total Quality issued a letter stating the following:

As per your doctor recommendation, [Plaintiff is] to be placed on a light duty position. Total Quality cannot accommodate this request; therefore, our company cannot continue your employment at this moment. Total Quality will reinstate you to your full-time job, once your doctor has released you and establish that you are ready to go back to work without restrictions.

65.     Following the March 27, 2017 meeting with Plaintiff, Ms. Acevedo approached Ms. Cruz and offered to switch duties with Plaintiff, which would allow Plaintiff to clean an area assigned to Ms. Acevedo, such as the lobby, while Ms. Acevedo cleaned the fifth floor bathrooms as Plaintiff had requested.

66.     Ms. Acevedo and Plaintiff worked approximately the same hours and switching duties would not have affected business operations nor imposed any expense on Defendant.

67.     Ms. Cruz declined Ms. Acevedo's proposal stating, again, that Plaintiff could only work for Defendant if she could perform one hundred percent of her duties.

68.     Upon information and belief, after Defendant terminated Plaintiff, Ms. Gutierrez also approached Ms. Cruz, offering to switch duties with Plaintiff.

69.     Ms. Cruz again refused to allow Ms. Gutierrez and Plaintiff to switch duties.

70.     On March 28, 2017, Plaintiff arrived at the workplace but Defendant had instructed the security guard to bar her from entering the building.

71.     Shortly thereafter, Plaintiff received a telephone call from Francisco Romero, Vice President of Total Quality.  Plaintiff attempted to explain that she could perform her duties with the accommodation of reassigning her bathroom duties.  Mr. Romero reiterated that Plaintiff could not work for Defendant unless she provided a note from her doctor permitting her to perform all of her duties.

72.     After receiving Plaintiff's doctor's note, dated March 22, 2017, Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, did not seek any additional information from Plaintiff, or her medical provider, about her requested accommodations, medical condition, or potential limitations before terminating her employment.

73.     Prior to terminating Plaintiff's employment, Defendant did not attempt to discuss with Plaintiff, or her medical provider, what duties Plaintiff could, or could not, perform.

74.     Prior to terminating Plaintiff's employment, Defendant did not attempt to discuss with Plaintiff, or her medical provider, what chemicals Plaintiff could, or could not, use.

75.     Prior to terminating Plaintiff's employment, Defendant did not engage in the interactive process to determine if a reasonable accommodation could be provided to Plaintiff.

76.     Defendant admitted that it did not discuss alternative accommodations to provide to Plaintiff—namely, alternatives to light duty or switching duties with a co-worker.

77.     At no time did Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, contemplate or discuss alternative providing accommodations to Plaintiff in order to allow her continued employment with Total Quality, including specifically accommodations such as the reassignment of Plaintiff's duties.

78.     Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, similarly did not contemplate or discuss placing Plaintiff in a different position either at the same building or at another building which Defendant cleaned in order to allow Plaintiff's continued employment with Total Quality.

79.     Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, did not determine, or attempt to determine, whether another position was available in the same building or another building which Defendant cleaned in order to allow Plaintiff's continued employment with Total Quality.

80.     Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, did not contemplate or discuss any other type of job restructuring for Plaintiff's position to allow her continued employment with Total Quality.

81.     Upon information and belief, Defendant employs night cleaners at 1025 F Street, NW, whose primary duties are vacuuming and removing trash. Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, did not consider, discuss, or offer reassigning Plaintiff to a night cleaner position in order to allow her continued employment with Total Quality.

11

82. Defendant did not allow Plaintiff to switch duties with a co-worker as a reasonable accommodation.

83. Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, made no effort to determine what, if any, expense it would incur by allowing Plaintiff to switch duties with a co-worker.

84. Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, made no effort to determine what, if any, effect allowing Plaintiff to switch duties would have on business operations.

85. Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, made no effort to determine what, if any, expense it would incur by offering Plaintiff any other potential alternative accommodation such as job reassignment, job restructuring, or job modification.

86. Defendant, including Ms. Cruz, Mr. Gomez, and Mr. Romero, made no effort to determine what, if any, effect offering an alternative accommodation to Plaintiff would have on business operations such as job reassignment, job restructuring, or job modification.

87. Plaintiff was approved for unemployment after Defendant terminated her employment.

88. Upon information and belief, Defendant has accommodated non-pregnant employees in a similar manner as requested by Plaintiff.

89. As a direct result of Defendant's discriminatory actions, Plaintiff suffered economic harm, emotional distress, anxiety, humiliation, pain, suffering, and loss of enjoyment of life.

90. At all times relevant to the instant Complaint, Plaintiff was a single mother of a young daughter and was also pregnant with her second child. Plaintiff relied on her income from

12

Defendant to support her daughter and prepare for the upcoming birth of her second child. Defendant's actions caused Plaintiff significant financial harm and she struggled to pay her bills, and provide for her family, while she was unemployed.

91.     Additionally, Defendant's actions caused, and continue to cause, Plaintiff to experience significant emotional distress. Often, after Defendant terminated her employment, Plaintiff could not afford to buy enough groceries to provide her daughter with the food and nutrition that she needed and that Plaintiff previously provided. Plaintiff felt hopeless, depressed, and an overwhelming sense of guilt about the effect losing her job was having on her daughter and unborn child. At her lowest moments, Plaintiff wished that she was not pregnant or that she had not requested reasonable accommodations.

92.     Defendant's actions caused Plaintiff to suffer from uncontrollable crying spells, experience difficulty concentrating and sleeping, and difficulty performing day-to-day activities. Plaintiff also became withdrawn and socially isolated. In the weeks following her separation from Defendant, Plaintiff lost her appetite and was unable to eat due to the stress she experienced. This caused her to fear for the well-being of her unborn child.

93.     Defendant's actions caused Plaintiff to feel embarrassed and humiliated. She was particularly humiliated by the way in which Defendant publically barred her from the workplace on March 28, 2017 by having security actively prevent her from entering the building.

## CAUSES OF ACTION

### Count 1: Discrimination on the Basis of Sex in Violation of the Pregnancy Discrimination Act of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

94.     Plaintiff incorporates the allegations set forth in paragraphs 1-93 above as though each and every allegation is fully set forth herein.

13

95.     At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of the PDA of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

96.     At all times material to this Complaint, Plaintiff was a pregnant female, a group protected by the provisions of Title VII, 42 U.S.C. § 2000e(k).

97.     At all times material to this Complaint, Plaintiff was qualified and entitled to her position within the meaning of Title VII, 42 U.S.C. § 2000e-2(a).

98.     Defendant was aware of Plaintiff's pregnancy as she informed her supervisors that she was pregnant in or around February 2017 and later informed Ms. Cruz that she required an accommodation because of her pregnancy.

99.     At all times material to this Complaint, Plaintiff suffered an adverse employment action within the meaning of Title VII, 42 U.S.C. § 2000e-2(a) when Defendant refused to accommodate her request to change duties and terminated her employment within hours after Plaintiff requested a reasonable accommodation due to her pregnancy and provided supporting medical documentation.

100.    Plaintiff was treated less favorably than other non-pregnant employees who were not terminated.

101.    Upon information and belief, Defendant accommodated non-pregnant employees.

102.    These discriminatory actions constitute violations of the PDA of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

103.    As a direct result of Defendant's discriminatory actions, taken against Plaintiff because of her pregnancy, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

14

**Count 2: Discrimination on the Basis of Disability and Regarded as Disabled in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.***

104.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-103 as though each and every allegation is fully set forth.

105.    At all times material to this Complaint, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12101(5)(A), *et seq.*, 29 C.F.R. § 1630.1, *et seq.*

106.    At all times material to this Complaint, Plaintiff was an employee within the meaning of the ADA, 42 U.S.C. § 12111(4).

107.    At all times material to this Complaint, Plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1).

108.    Plaintiff suffered from severe back pain related to her pregnancy which limited her ability to bend and squat and other major life activities.

109.    Plaintiff was qualified to perform her duties which was evidenced by her history of excellent performance.

110.    At the time Defendant terminated Plaintiff's employment, Defendant was aware of Plaintiff's disability.

111.    Defendant terminated Plaintiff hours after she informed Defendant of her disability and need for a reasonable accommodation.

112.    These discriminatory actions constitute violations of the ADA, 42 U.S.C. § 12101, *et seq.*

113.    As a direct result of Defendant's discriminatory actions, taken against Plaintiff because of her pregnancy, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

15

**Count 3: Failure to Accommodate in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.***

114.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-113 as though each and every allegation is fully set forth.

115.    At all times material, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.*

116.    At all times material, Plaintiff was an employee within the meaning of the ADA, 42 U.S.C. § 12111(4).

117.    Plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1).

118.    Plaintiff suffered from severe back pain related to her pregnancy which limited her ability to bend and squat and other major life activities.

119.    Plaintiff was qualified to perform her duties which was evidenced by her history of excellent performance.

120.    Plaintiff could have performed the essential functions of her job with a reasonable accommodation such as switching duties or other job modification.

121.    On March 27, 2017, Plaintiff informed Defendant of her disability and need for an accommodation of changing duties or job modification so that she was not required to clean the bathrooms.  Plaintiff requested a reasonable accommodation both verbally and by providing Defendant with a copy of the March 22, 2017 doctor's note.

122.    Defendant denied Plaintiff's request for a reasonable accommodation of changing duties or job modification and informed her she could not continue her employment with Defendant if she could not perform all of her duties.  Defendant subsequently barred Plaintiff from entering the building and returning to work.

16

123.   Defendant failed to provide Plaintiff with any reasonable accommodation and failed to engage in the interactive process with Plaintiff and/or her physicians to determine an appropriate and reasonable accommodation for Plaintiff.

124.   Upon information and belief, providing Plaintiff with a reasonable accommodation would not have posed an undue hardship on Defendant because potential accommodations, such as but not limited to modification of job duties, job restructuring, and light duty, were possible without a material change in the services Defendant provided to its customers and without Defendant incurring any expense.  At no time did Defendant engage in any assessment of whether providing Plaintiff with her requested accommodation, or any alternative accommodation, would impose any kind of burden on Defendant.

125.   These discriminatory actions constitute violations of the ADA, 42 U.S.C. § 12101, *et seq.*

126.   As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional distress, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

**Count 4: Retaliation in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.***

127.   Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-126 as though each and every allegation is fully set forth.

128.   At all times material to this Complaint, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.*

129.   At all times material to this Complaint, Plaintiff was an employee within the meaning of the ADA, 42 U.S.C. § 12111(4).

130.    Plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1).

131.    Plaintiff suffered from severe back pain related to her pregnancy which limited her ability to bend and squat and other major life activities.

132.    Plaintiff was qualified to perform her duties which was evidenced by her history of excellent performance.

133.    Plaintiff could have performed the essential functions of her job with a reasonable accommodation such as switching duties or other job modification.

134.    On March 27, 2017, Plaintiff engaged in protected activity pursuant to the ADA when she requested a reasonable accommodation of changing duties.

135.    Within hours of requesting a reasonable accommodation, Defendant terminated Plaintiff's employment because she requested a reasonable accommodation.

136.    These discriminatory actions constitute violations of the ADA, 42 U.S.C. § 12101, *et seq.,* and are retaliatory.

137.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

**Count 5: Failure to Accommodate a Request for a Reasonable Accommodation in Violation of the District of Columbia Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01, *et seq.***

138.    Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-137 as though each and every allegation is fully set forth.

139.    At all times material to this Complaint, Plaintiff was a covered employee within the meaning of the PPFWA, D.C. Code § 32-1231.01, *et seq.*

140.    At all times material to this Complaint, Defendant was an employer within the meaning of the PPFWA, D.C. Code § 32-1231.01, *et seq.*

141.    Plaintiff was an employee whose ability to perform the functions of her job was limited by pregnancy and a related medical condition.

142.    Plaintiff could have performed the essential functions of her position with a reasonable accommodation such as switching duties or other job modification.

143.    On March 27, 2017, Plaintiff informed Defendant of her disability and need for an accommodation because of her pregnancy and pregnancy-related condition.  Plaintiff specifically requested an accommodation of changing duties or other job modification so that she was not required to clean the bathrooms.  Plaintiff made the request both verbally and by providing Defendant with a copy of the March 22, 2017 doctor's note.

144.    Defendant denied Plaintiff's request for a reasonable accommodation of modifying or switching her job duties and informed her she could not continue her employment with Defendant if she could not perform all of her job duties.  Defendant subsequently barred Plaintiff from entering the building.

145.    Defendant failed to provide Plaintiff with any reasonable accommodation and failed to engage in the interactive process with Plaintiff and/or her physician to determine an appropriate and reasonable accommodation for Plaintiff.

146.    Upon information and belief, providing Plaintiff with a reasonable accommodation would not have posed an undue hardship on Defendant because potential accommodations, such as but not limited to modification of job duties, job restructuring, and

19

light duty, were possible without a material change in the services Defendant provided to its customers and without Defendant incurring any expense.   At no time did Defendant engage in any assessment of whether providing Plaintiff with her requested accommodation, or an alternative accommodation, would impose any kind of burden on Defendant.

147.    These discriminatory actions constitute violations of the PPFWA, D.C. Code § 32-1231.03(1).

148.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

### Count 6: Taking a Prohibited Adverse Action in Violation of the District of Columbia Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01, *et seq.*

149.    Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-148 as though each and every allegation is fully set forth.

150.    At all times material to this Complaint, Plaintiff was a covered employee within the meaning of D.C. Code § 32-1231.01, *et seq.*

151.    At all times material to this Complaint, Defendant was an employer within the meaning of D.C. Code § 32-1231.01, *et seq.*

152.    Plaintiff was an employee whose ability to perform the functions of her job was limited by pregnancy and a related medical condition.

153.    Plaintiff could have performed the essential functions of her position with a reasonable accommodation such as switching duties or other job modification.

154.    On March 27, 2017, Plaintiff informed Defendant of her disability and need for an accommodation because of her pregnancy and pregnancy-related condition.  Plaintiff specifically requested an accommodation of changing duties or job modification so that she was not required

to clean the bathrooms. Plaintiff made the request both verbally and by providing Defendant with a copy of the March 22, 2017 doctor's note.

155.    Defendant denied Plaintiff's request for a reasonable accommodation of modifying her job duties and informed her she could not continue employment with Defendant unless she provided a note from her doctor authorizing her to perform all of her duties. Defendant subsequently barred Plaintiff from entering the building.

156.    Defendant failed to provide Plaintiff with any reasonable accommodation and failed to engage in the interactive process with Plaintiff and/or her physician to determine an appropriate and reasonable accommodation for Plaintiff.

157.    Upon information and belief, providing Plaintiff with a reasonable accommodation and permitting her to continue working with an accommodation would not have posed an undue hardship on Defendant because potential accommodations, such as but not limited to modification of job duties, job restructuring, and light duty, were possible without a material change in the services Defendant provided to its customers and without Defendant incurring any expense.

158.    At no time did Defendant engage in any assessment of whether providing Plaintiff with her requested accommodation, or an alternative accommodation, would impose any kind of burden on Defendant.

159.    These discriminatory actions constitute violations of D.C. Code § 32-1231.03.

160.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

**Count 7: Discrimination on the Basis of Sex in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01,** *et seq.*

21

161.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-160 as though each and every allegation is fully set forth

162.     At all times material, Defendant was an employer within the meaning of the DCHRA, D.C. Code § 2-1401.02(10).

163.     At all times material, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1401.02(9).

164.     At all times material to this Complaint, Plaintiff was a pregnant female, a group protected by the provisions of the DCHRA, D.C. Code § 2-1402.11(a)(1) and D.C. Code § 2-1401.05.

165.     Plaintiff suffered from severe back pain related to her pregnancy, which limited her ability to bend and squat and other major life activities.

166.     At all times material, Plaintiff was qualified to perform her duties, which was evidenced by her history of excellent performance, within the meaning of the DCHRA, D.C. Code § 2-1402.11(a)(1)

167.     Defendant was aware of Plaintiff's pregnancy as she informed her supervisors that she was pregnant in or around February 2017 and later informed Ms. Cruz that she required an accommodation because of her pregnancy.

168.     Plaintiff suffered discrimination on the basis of her sex within the meaning of the DCHRA, D.C. Code § 2-1402.11(a)(1) and D.C. Code § 2-1401.05 when Defendant refused to accommodate her request to change duties and terminated he reemployment within hours after Plaintiff requested a reasonable accommodation due to her pregnancy and provided supporting medical documentation.

22

169.   Plaintiff was treated less favorably than other non-pregnant employees who were not terminated.

170.   Upon information and belief, Defendant accommodated non-pregnant employees.

171.   These discriminatory actions constitute violations of the DCHRA, D.C. Code § 2-1402.11(a)(1).

172.   As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

## Count 8: Discrimination Based on Disability and Regarded as Disability in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.05, *et seq.*

173.   Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-172 as though each and every allegation is fully set forth.

174.   At all times material to this Complaint, Defendant was an employer within the meaning of the DCHRA, D.C. Code § 2-1402.02(10).

175.   At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1402.02(9).

176.   At all times material to this Complaint, Plaintiff suffered from a disability, a group protected by the provisions of the DCHRA, D.C. Code § 2-1402.11(a)(1) and D.C. Code § 2-1401.05.

177.   Plaintiff suffered from severe back pain which limited her ability to bend and squat and other major life activities.

178.   At all times material to this Complaint, Plaintiff was qualified to perform her duties, which was evidenced by her history of excellent performance.

23

179.    At the time Defendant terminated Plaintiff's employment, Defendant was aware of Plaintiff's disability.

180.    Defendant terminated Plaintiff hours after she informed Defendant of her disability and need for a reasonable accommodation.

181.    These discriminatory actions constitute violations of the DCHRA, D.C. Code § 2-1402.11(a)(1).

182.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

### Count 9: Failure to Accommodate in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.*

183.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-182 as though each and every allegation is fully set forth.

184.    At all times material to this Complaint, Defendant was an employer within the meaning of the DCHRA, D.C. Code § 2-1402.02(10).

185.    At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1402.02(9).

186.    Plaintiff was a qualified individual with a disability within the meaning of the DCHRA, D.C. Code § 2-1402.11(a)(1).

187.    Plaintiff suffered from severe back pain which limited her ability to bend and squat and other major life activities.

188.    Plaintiff was qualified to perform her duties which was evidenced by her history of excellent performance.

24

189.    Plaintiff could have performed the essential functions of her job with a reasonable accommodation such as switching duties or job modification.

190.    On March 27, 2017, Plaintiff informed Defendant of her disability and need for an accommodation of changing duties or job modification so that she was no required to clean the bathrooms.  Plaintiff requested a reasonable accommodation both verbally and by providing Defendant with a copy of the March 22, 2017 doctor's note.

191.    Defendant denied Plaintiff's request for a reasonable accommodation of changing duties or job modification and informed her she could not continue her employment with Defendant if she could not perform all of her duties.  Defendant subsequently barred Plaintiff from entering the building and returning to work.

192.    Defendant failed to provide Plaintiff with any reasonable accommodation and failed to engage in the interactive process with Plaintiff and/or her physicians to determine an appropriate and reasonable accommodation for Plaintiff.

193.    Upon information and belief, providing Plaintiff with a reasonable accommodation would not have posed an undue hardship on Defendant because potential accommodations, such as but not limited to modification of job duties, job restructuring, and light duty, were possible without a material change in the services Defendant provided to its customers and without Defendant incurring any expense.  At no time did Defendant engage in any assessment of whether providing Plaintiff with her requested accommodation, or any alternative accommodation, would impose any kind of burden on defendant.

194.    These discriminatory actions constitute violations of the DCHRA, D.C. Code § 2-1402.11(a)(1).

25

195.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

## Count 10:  Retaliation in Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq*

196.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-195 as though each and every allegation is fully set forth.

197.    At all times material to this Complaint, Defendant was an employer within the meaning of the DCHRA, D.C. Code § 2-1402.02(10).

198.    At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1402.02(9).

199.    Plaintiff suffered from severe back pain which limited her ability to bend and squat and other major life activities.

200.    Plaintiff was qualified to perform her duties which was evidenced by her history of excellent performance.

201.    Plaintiff could have performed the essential functions of her job with a reasonable accommodation such as switching duties or other job modification.

202.    On March 27, 2017, Plaintiff engaged in protected activity pursuant to the DCHRA when she requested a reasonable accommodation of changing duties.

203.    Within hours of requesting a reasonable accommodation, Defendant terminated Plaintiff's employment because she requested a reasonable accommodation.

204.    These discriminatory actions constitute violations of the  DCHRA, D.C. Code § 2-1402.11(a)(1) and D.C. Code § 2-1402.61 and are retaliatory.

205.    As a direct result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court adjudge the following:

A.    That Defendant be found in violation of the Pregnancy Discrimination Act ("PDA") of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.*, 29 C.F.R. § 1630.1, *et seq.*, ("ADA"), the District of Columbia Protecting Pregnant Workers Fairness Act of 2014, D.C. Code § 32-1231.01, *et seq.* ("PPWFA"), and the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.* ("DCHRA"); and

B.    That Defendant be ordered to pay Plaintiff an amount sufficient to fully compensate her (including tax consequences) for her economic losses, including lost wages and benefits, interest on the back pay, and compensation for any special damages sustained as a result of the Defendant's unlawful action;

C.    That Defendant be ordered to pay compensatory (non-economic) damages, in an amount to be determined at trial;

D.    That Defendant be ordered to pay punitive damages, in an amount to be determined at trial;

E.    That Defendants be ordered to pay reasonable litigation costs, expert fees, and reasonable attorneys' fees; and,

F.    That the Court grant any other such relief that the Court may deem just and equitable, and as the nature of this cause may require.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Plaintiff demands a jury trial as to all issues so triable.

Dated: January 3, 2018                    Respectfully submitted,

Stephanie M. Herrera, Esq. (Bar No. MD17994)
Cori M. Cohen, Esq. (Bar No. MD19124)
*Attorneys for the Plaintiff*
Gilbert Employment Law, P.C.
1100 Wayne Ave., Ste. 900
Silver Spring, MD 20910
Tel: (301) 608-0880; Fax: (301) 608-0881
sherrera-efile@gelawyer.com
ccohen-efile@gelawyer.com

28